# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 7704 | DATE | 12/8/2004 |
| CASE TITLE | Indira Adusumilli vs. Palliative Care Center and Hospice of the North Shore | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendant's motion for summary judgment [#23] is granted. Judgment is entered in favor of the defendant and against the plaintiff. Defendant's motion for sanctions [#35] is granted. Defendant is given until 1/7/05 to submit a bill of costs and declaration of fees containing the information required by L.R. 54.3(d)(1)-(3), although it is excused from any effort to negotiate the matter of fees with plaintiff. All future dates are stricken, including the trial set for January 2005.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 09 2004 | 36 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/8/2004 | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INDIRA ADUSUMILLI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 7704 |
| vs. ) | |
| ) | Judge Joan H. Lefkow |
| PALLIATIVE CARE CENTER AND ) | |
| HOSPICE OF THE NORTH SHORE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Indira Adusumilli ("Adusumilli") brings this *pro se* action alleging that her former employer, Palliatative Care Center and Hospice of the North Shore ("Hospice"), discriminated against her on the basis of race, national origin, and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-1 *et seq.* and 42 U.S.C. § 1981, and on the basis of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.* Adusumilli further alleges that she was discharged in retaliation for pursuing an internal grievance. The court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Before the court are Hospice's motion for summary judgment and motion for sanctions. For the reasons stated below, the court grants both motions.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part

of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Adusumilli worked as an administrative assistant for Hospice from March 5, 2003 until her termination on August 8, 2003. Her duties during this period included assessing foundations and charitable organizations for grants, updating information for Hospice's Tree of Life participants, answering donation calls, and providing administrative support for Hospice's fundraising event held in July 2003.

According to Adusumilli, she was subjected to harassment and a hostile work environment because three of her co-workers, Chuck Allworth ("Allworth"), Rebecca Petrek ("Petrek"), and a maintenance worker, inappropriately ogled various parts of her body, including her legs, knees, groin, and breasts, on fewer than ten occasions. (Def. L.R. 56.1 ¶ 25). Two female coworkers looked at her shoes in a "dirty" manner. (Def. L.R. 56.1 ¶ 27). On another occasion, Adusumilli's

office manager "inappropriately" served her a piece of pizza. (Def. L.R. 56.1 ¶ 32). Similarly, Heidi Schelling ("Schelling"), Hospice's Vice President of Business Development, "inappropriately" served Adusumilli a piece of cake. (Def. L.R. 56.1 ¶ 32). Adusumilli also faced "slights" in the workplace: Hospice's CEO did not greet her properly on one occasion, Schelling corrected her pronunciation on one occasion, and her supervisors claimed that they were unable to understand Adusumilli's spoken English on two occasions. (Def. L.R. 56.1 ¶¶ 37, 39, 41). In addition, Schelling asked Allworth to "go get some wine" at a party held outside of work. (Def. L.R. 56.1 ¶ 43).

In July of 2003, Hospice held a fundraising event at Ravinia for which Adusumilli provided administrative support. Adusumilli's responsibilities for this event included sending confirmation letters to donors who had ordered tickets to the event. Although Adusumilli had been instructed to use the husband's name when sending letters to married couples, several donors complained that their confirmation letters were addressed to the wife's name rather than the husband's name (*e.g.*, Mr. and Mrs. Jane Doe). Several donors also voiced complaints to Petrek about Adusumilli's telephone skills. In addition, Adusumilli assisted in preparing name tags for the event. When preparing a name tag for one of Hospice's major donors and his guest, Adusumilli created a name tag for the donor's deceased wife. She incorrectly presumed that the donor would be accompanied by his wife because she did not have the name of the donor's guest. The donor informed Hospice management that the name tag error ruined his evening.[1]

---

[1] Adusumilli disputes that she improperly addressed letters to donors, that donors complained about Adusumilli's telephone skills, and that the donor spoke with Hospice management about the name tag incident because she has no personal knowledge of these incidents. *See* Pl. Resp. L.R. 56.1 at ¶¶ 18, 20, 23. Adusumilli failed to include or cite to any documents or declarations showing how Hospice's statements were false. This court provided Adusumilli with clear instructions as to how to respond to the Defendant's Rule 56.1 Statement of Uncontested Facts in its Order [#26] of October 6, 2004. Adusumilli failed to follow these instructions. Under

3

On August 8, 2003, Allworth, Hospice's Director of Development, and Schelling terminated Adusumilli. Allworth informed Adusumilli that she operated on "a higher wavelength" than Hospice's other employees and was unable to "get connected" to her coworkers. (Pl. Resp. L.R. 56.1 ¶ 13). That same day, Adusumilli filed a charge of discrimination with the Illinois Department of Human Rights in which she alleged that she was subjected to sexual harassment and discriminated against because of her race, national origin, sex, and age. Adusumilli concedes that she made errors in her work and that on more than one occasion she accused others of using her password to change her work. (Def. L.R. 56.1 ¶ 15; Pl. Resp. L.R. 56.1 ¶ 15). She further admits that she never complained of sexual harassment at any time during her employment with Hospice.

Following her termination, Adusumilli claims that Petrek refused to provide an employment reference for her in retaliation for filing the charge of discrimination. It is the policy of Hospice to provide employee references from its Human Resources Department consisting only of the employee's job title and dates of employment.[2] Adusumilli never received a copy of this policy during her employment with Hospice. Petrek received two reference inquiries for Adusumilli and referred both inquiries to the Human Resources Department. The Human Resources Department provided references for Adusumilli on both occasions in accordance with its employee reference

---

Local Rule 56.1(b)(3)(B), the court deems any fact admitted in the opponent's statement of facts unless the fact is properly denied by the opposing party. *See also McGuire v. United Postal Serv.*, 152 F.3d 673, 675 (7th Cir. 1998)("An answer that does not deny the allegations in the numbered paragraphs with citations to supporting evidence in the record constitutes an admission."). Thus, the court deems admitted paragraphs 18, 20, and 23 of the Defendant's Local Rule 56.1 Statement of Uncontested Facts.

[2]Adusumilli states that she disagrees with Hospice's statement that it requires that employment references consist only of job title and dates of employment and come from Hospice's human resources department because she never received a copy of this policy. *See* Pl. Resp. L.R. 56.1 ¶ 45. Not only does Adusumilli's response fail to cite to the record or to a sworn affidavit, it fails to refute the substance of Hospice's statement. As a consequence, paragraph 45 of the Defendant's Rule 56.1 Statement of Uncontested Facts is deemed admitted.

policy. Adusumilli concedes that she has no personal knowledge that any potential employer was denied an employment reference. (Pl. Resp. L.R. 56.1 ¶¶ 48-49).

## DISCUSSION

Hospice moves for summary judgment on the merits of Adusumilli's claims and on the grounds that Adusumilli's response to Hospice's Local Rule 56.1 Statement of Uncontested Facts fails to comply with either the Federal Rules of Civil Procedure or the Local Rules of the Northern District. The court will first examine the merits of Adusumilli's claims.

### I.  Hostile Work Environment

Hospice argues that it is entitled to summary judgment as to Adusumilli's claim of hostile work environment sexual harassment because Adusumilli's allegations fail to come even close to constituting severe or pervasive behavior. The court agrees.

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986). In order for Adusumilli to make out a *prima facie* case of a hostile work environment, she must show that "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [her] sex; (3) the sexual harassment had the effect of unreasonably interfering with [her] work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the employee; and (4) there is a basis for employer liability." *Hall* v. *Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002), quoting *Parkins* v. *Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

5

Although the conduct in question is judged by both an objective and subjective standard, as the Seventh Circuit has made clear, "isolated and innocuous incidents will not support a hostile environment claim." *Doe v. R.R. Donnelley & Sons*, 42 F.3d 439, 444 (7th Cir. 1994), citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 126 L. Ed. 295, 114 S. Ct. 367 (1993)). Under the subjective standard, the court gives "proper weight to the employee's injury in fact, acknowledging the different ways in which a plaintiff initially responds to or copes with harassment." *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1272 (7th Cir. 1991). Under the objective standard, the court evaluates "the work environment and the instances of harassment against a reasonableness standard," *id.*, by considering "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the worker's performance." *R.R. Donnelly*, 42 F.3d at 444.

In support of her claim of hostile work environment sexual harassment, Adusumilli claims that three of her co-workers ogled her legs, knees, groin, and breasts on fewer than ten occasions, that she was "inappropriately" given a piece of pizza and a piece of cake, and that co-workers looked at her shoes in a "dirty" manner. Such conduct, as Adusumilli is well aware,[3] does not create an objectively hostile or abusive work environment because it is not sufficiently severe, pervasive, or humiliating to affect the terms of a reasonable person's employment. *See, e.g., Adusumilli v. Discover Fin. Servs., Inc.*, 62 Fed. Appx. 721 (7th Cir. 2003) ("Adusumilli has been told repeatedly and unequivocally both by us and by the district court that . . . 'ogling,' staring, and accidental

---

[3]During her deposition in this matter, Adusumilli admitted that she never complained of the alleged sexual harassment because the judges in her previous sexual harassment lawsuits informed her that behavior similar to that which she claims to have endured at Hospice does not rise to the level of sexual harassment. (Def. L.R. 56.1 at ¶ 31).

6

touching - - is not severe or pervasive enough to be actionable under Title VII."), *cert. denied*, 124 S. Ct. 1150, 157 L. Ed.2d 1046 (2004); *Adusumilli v. Ill. Inst. of Tech.*, 191 F.3d 455 (7th Cir. 1999) (affirming dismissal of claim for sexual harassment by professors and students; defendants' alleged ogling and touching plaintiff's hand, shoulder, back, leg, and breast not enough to state a claim); *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) (affirming summary judgment in favor of employer on complaint of sexual harassment; defendants' alleged ogling and touching plaintiff's arm, fingers, and buttocks not enough to state a claim), *cert. denied*, 528 U.S. 988, 120 S. Ct. 450, 145 L. Ed. 2d 367 (1999). The courts in these decisions informed Adusumilli that "ogling" is not actionable. Moreover, in these cases, the courts rejected Adusumilli's claims even though Adusumilli alleged that, in addition to the "ogling," she was touched in some manner by her co-workers. Here, Adusumilli does not even allege that she was touched, nor does she describe how she was "inappropriately" offered pizza and cake other than that she did not like the offerors' facial expressions. *See* Def. L.R. 56.1, Adusumilli Dep. at PP. 96-99.

As the above list of previous suits filed by Adusumilli illustrates, Adusumilli's previous claims of similar conduct have been soundly rejected and most, if not all, were in fact frivolous. *E.g.*, *Adusumilli v. Discover Fin. Servs.*, No. 98 C 6129, 1999 U.S. Dist. LEXIS 6580, 1999 WL 286289, at *7 (N.D. Ill. April 19, 1999) (circulating a copy of opinion to every judge in this district to warn Adusumilli that she could be sanctioned for filing such baseless law suits). Adusumilli's allegations in the instant matter similarly fail to state a claim of harassment and, instead, are frivolous. Thus, the court grants Hospice'ss motion for summary judgment as to Adusumilli's claim of hostile work environment sexual harassment.

## II. DISCRIMINATION

Adusumilli also fails to raise a genuine issue of material fact with regard to her claim of discrimination based on her race, sex, national origin, and age. Under Title VII, an employer cannot "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1). Likewise, the ADEA prohibits employers from discriminating against an employee who is at least 40 years of age "with respect to [her] compensation, terms, conditions or privileges or employment, because of such individual's age." 29 U.S.C. §§ 623, 631. Adusumilli may meet her burden of proof under Title VII and the ADEA either through offering direct proof of discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003)("We employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA, Title VII, or § 1981.")(citations omitted).

### A. Direct Method of Proof

"Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001), citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Adusumilli may demonstrate her case with evidence which, if believed by a trier of fact, will prove the particular fact in question without reliance on inference or presumption. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751

8

(7th Cir. 1998), quoting *Plair v. E.J. Branch & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). Further, a proffer of direct evidence must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question. *Plair*, 105 F.3d at 347.

In this case, Adusumilli has not indicated which method of proof she intended to utilize.[4] The evidence relied upon by Adusumilli in support of her claim of discrimination are the "slights" of not being greeted properly on one occasion, having her pronunciation corrected on one occasion, and being informed by her supervisors on two occasions that they could not understand her English, as well as having her shoes looked at in a "dirty" manner and being "inappropriately" served pizza and cake. There is no evidence, however, that any of these acts were related to the specific employment decision in question, *i.e.*, her termination. *See Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 624-25 (7th Cir. 2002) (determining statements must be made "(1) around the time of, and (2) in reference to, the adverse employment action complained of." (internal citations omitted)); *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997) ("Evidence of discriminatory motives must . . . have some relationship with the employment decision in question; inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do."). Thus, Adusumilli has not demonstrated direct proof of discrimination.

---

[4]Indeed, Adusumilli's entire response to Hospice's argument concerning her claim of discrimination consists of unsupported allegations that Hospice is engaged in unlawful activities involving violations of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 300gg, *et seq*. *See* Pl. Resp. at P. 3. Adusumilli asserts that she was asked to access patients' files in order to send mail soliciting donations from those patients, which she refused to do. Adusumilli informed Hospice's staff attorney of her concerns about the mailing, and the staff attorney responded by instructing Adusumilli's supervisor, Petrek, to place the mailing on hold. Petrek later informed Adusumilli that the staff attorney had allowed the mailing to go forward, but Adusumilli was not asked to work on the mailing. Adusumilli does not allege or provide any affidavits or corroborating evidence that her refusal to perform that task or similar tasks resulted in her termination. It is well-settled that "conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *See Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719 at 724 (7th Cir. 1998). Thus, Adusumilli allegations are insufficient to withstand summary judgment.

B.  **Indirect Method of Proof**

Under the *McDonnell Douglas* burden-shifting method, Adusumilli must raise an inference of discrimination by offering sufficient evidence to make out a *prima facie* case. *Contreras*, 237 F.3d at 759. Adusumilli must demonstrate that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) Hospice treated similarly situated employees outside of her protected class more favorably. *Id.* If Adusumilli can make a *prima facie* showing, then a presumption arises that Adusumilli was discriminated against, and Hospice must come forward with a legitimate nondiscriminatory reason for the employment action. *Id.* at 760. At this stage, Hospice need not prove that it was actually motivated by the proffered reason. Rather, Hospice "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.*, quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). Once Hospice has met this burden of production, Adusumilli must prove by a preponderance of the evidence that the reason offered by Hospice is merely a pretext for discrimination. *Contreras*, 237 F.3d at 760. "This court [then] looks to determine if a factual dispute exists as to whether the employer's reasons for its decision are honest and genuinely motivated." *Plair*, 105 F.3d at 348, citing *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995). Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that Hospice intentionally discriminated against Adusumilli remains at all times with Adusumilli. *Sirvidas*, 60 F.3d at 378.

Adusumilli is unable to make a *prima facie* showing of discrimination. Adusumilli satisfies the first and third factors of the *McDonnell Douglas* method because she is of Indian origin and she

suffered an adverse employment action because of her termination. Adusumilli, however, cannot show that she was meeting Hospice'ss legitimate expectations at the time of her termination. Although Adusumilli maintains that she has performed her job better than other employees and demonstrated excellence by accomplishing duties routinely performed by higher grade employees, she has offered no evidence in support of this assertion. "An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT&T Communications, Inc.*, 872 F.2d 845, 8448 (7th Cir. 1992). Instead, the undisputed evidence shows that Adusumilli blamed others for her own mistakes, prepared a name tag for a donor's deceased wife, misaddressed letters to donors even after instruction, was criticized for her phone skills, and failed to connect with her co-workers. Further, Adusumilli has offered no evidence that anyone outside of her protected class was treated more favorably in circumstances similar to hers. As stated above, the plaintiff has the burden to make the *prima facie* showing. Because Adusumilli has failed to do so, it is unnecessary to reach the issue of pretext. Therefore, the court will grant summary judgment in favor of Hospice on Adusumilli's claims of discrimination under Title VII.

In addition, Adusumilli has not made any allegations or produced any evidence involving her age or how she was discriminated against because of her age. It appears that Adusumilli dropped this claim altogether because, with the exception of her complaint, it is not discussed anywhere in any of her filings before this court. As a consequence, the court grants summary judgment in favor of Hospice as to Adusumilli's claim under the ADEA.

## III. RETALIATION

Hospice also argues that it is entitled to summary judgment as to Adusumilli's claim of retaliation because Adusumilli cannot establish that Hospice retaliated against her. Post-termination retaliation is cognizable under Title VII and follows the *McDonnell Douglas* framework for analysis. *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir. 1997). To establish a *prima facie* case of retaliation, Adusumilli must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Parkins*, 163 F.3d at 1038-39, citing *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 397 (7th Cir. 1998). If she establishes these elements, Hospice has the burden to produce a legitimate, nondiscriminatory reason for its actions. Once this reason is produced, Adusumilli must prove that the reason is pretextual. *Parkins*, 163 F.3d at 1039.

Adusumilli satisfies the first element of the *prima facie* case of retaliation in that filing a charge of discrimination with the EEOC constitutes protected activity. Adusumilli, however, fails to satisfy the second element of a *prima facie* case because she cannot show that she suffered an adverse employment action. Adusumilli claims that Hospice retaliated against her for filing the charge with the EEOC by refusing to provide employment references for her. Although Adusumilli never received a copy of Hospice's employment reference policy, she does not dispute that such a policy exists or that it is enforced. The undisputed evidence shows that on two occasions, Adusumilli's supervisor, Petrek, received requests for employment references for Adusumilli. Petrek referred both requests to Hospice's Human Resources Department. On both occasions, the Human Resources Department provided information concerning Adusumilli's position and dates of employment. Adusumilli has no knowledge and has offered no evidence that any other requests for

employment references were made to Hospice or that Hospice refused to provide employment references for her.

Adusumilli, instead, argues that Hospice's policy concerning employment references and its refusal to allow her supervisor to give her employment reference constitute discrimination. An employer may be held liable under Title VII, if it provides a *negative* employment reference in retaliation against a former employee for engaging in a protected activity. *See* 42 U.S.C. § 2000e-3(a); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339-40, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997)(emphasis added). It is undisputed that the employment references provided by Hospice consisted only of Adusumilli's position and dates of employment. Such neutral references by themselves do not constitute retaliation, nor does Hospice's refusal to allow its supervisors to provide more detailed employment references constitute discrimination. Adusumilli has not produced any evidence that Hospice failed to follow its employment reference policy for other former employees or that it included a negative evaluation of Adusumilli on the two occasions when her employment references were requested. Adusumilli cannot show that she suffered an adverse employment action. Thus, the court grants summary judgment in favor of Hospice as to Adusumilli's claim of retaliation.

### IV. Adusumilli's Failure to Comply with the Federal Rules of Civil Procedure and Local Rules of the Northern District of Illinois.

Because the court grants Hospice's motion for summary judgment on the merits of Adusumilli's claims, it is unnecessary for the court to grant summary judgment in favor of Hospice as a result of Adusumilli's failure to comply with the Federal Rules of Civil Procedure or Local Rule 56.1.

## V. Hospice's Motion for Sanctions

Hospice requests that the court sanction Adusumilli in such a way as to put an end to her senseless and repetitive filings. Rule 11 of the Federal Rules of Civil Procedure hold parties, even parties proceeding *pro se*, to a specific standard for filing claims in federal court. Rule 11 states that "[b]y presenting to the court . . . a pleading, . . . an unrepresented person is certifying to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*, - - . . . .(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11(b) (emphasis added).

"A prevailing defendant may be entitled to attorney's fees if the plaintiff's action was 'frivolous, unreasonable, or without foundation . . . .'" *Vitug v. Multistate Tax Comm'n*, 883 F. Supp. 215, 218-19 (N.D. Ill. 1995), citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Unity Ventures v. County of Lake*, 894 F.2d 250, 253 (7th Cir. 1990))." In addition to sanctions, the court also may restrict a litigant's access to the courts. *See, e.g., Lysiak v. C.I.R.*, 816 F.2d 311, 313 (7th Cir. 1987)(enjoining *pro se* litigant from filing additional pleadings until previous monetary sanctions were paid). In fact, the Seventh Circuit fined Adusumilli $1500 and limited her access to the courts for filing frivolous appeals in lawsuits in which she alleged that her co-workers ogled and accidently touched her. *See Adusumilli v. Discover Fin. Servs.*, 62 Fed. Appx. at 725 ("We warn Adusumilli that if she fails to pay the sanction by the due date, the court will enter an order directing the clerks of all federal courts in this circuit to return unfiled any papers submitted either directly or indirectly by or on behalf of the appellant unless she pays in full the sanction that has been imposed against her.").

14

Other district courts and the Seventh Circuit have warned Adusumilli repeatedly that allegations similar to those that she alleged in the present lawsuit do not constitute actionable claims. *See, e.g., Adusumilli v. Discover Fin. Servs., Inc.*, 62 Fed. Appx. 721 at 724; *Adusumilli v. Discover Fin. Servs., Inc.*, 1999 U.S. Dist. LEXIS 6580 at *9 ("Numerous courts, including the Seventh Circuit, and two other district courts aside from this one, have told Adusumilli that ogling is not actionable.")(citations omitted). This court similarly warned Adusumilli twice to seriously consider the consequences of proceeding with the lawsuit. *See* May 24, 2004 Minute Order, #20; Oct. 6, 2004 Minute Order, #26. The court further advised Adusumilli that it would not hesitate to declare this action frivolous and to sanction Adusumilli in the form of a substantial judgment to compensate Hospice for its costs if the allegations in her complaint were the only instances of alleged discrimination. *Id.* Adusumilli, however, chose to continue pursuing this frivolous action by responding to Hospice's motion for summary judgment and raising new and even more frivolous allegations that she was "inappropriately" served a piece of pizza and a piece of cake and that her pronunciation of a word was corrected.

By continuing to file and pursue frivolous lawsuits, Adusumilli has unnecessarily cost the courts and the defendant both time and money. It is apparent to this court that Adusumilli will continue to file frivolous lawsuits unless she is stopped. Adusumilli even admitted as much in her deposition:

A.  I brought a lawsuit because I was terminated. I lost my job. That's very important for my life.

Q.  So this is about losing the job and not about the harassment that you know is not illegal, correct?

15

A. Well, but still I listed all the incidents per - - that was the guidelines, all those incidents are still unwelcome.

Judges still have to decide. Even I file five lawsuits - - I might file 20 lawsuits, still I might go. I might do the same thing.

Q. You will file them until the judges tell you you can't file them anymore, correct?

A. Yes.

(Def. Mot. for Sanctions, Ex. C, Pl. Dep. at PP. 189-190).

In response to Hospice's motion for sanctions, Adusumilli raised a number of irrelevant arguments, including that she has the right to hold a job and that she received a right-to-sue letter from the EEOC. Adusumilli, however, admitted that she had no contract with Hospice, but she fails to understand that she was an at-will employee of Hospice. (Def. L.R. 56.1 ¶¶ 9, 10; Pl. Resp. L.R. 56.1 ¶¶ 9, 10). *See Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 at 317, 115 Ill. 2d 482, 106 Ill. Dec. 8 (Ill. 1987)("[A]n employment relationship without a fixed duration is terminable at will by either party."). In addition, her receipt of a right-to-sue letter from the EEOC does not make her claims any less frivolous. *See, e.g., Moore v. L. Fish Furniture Co.*, No. 92 C 7855, 1992 U.S. Dist. LEXIS 18778 at * (N.D. Ill. Dec. 29, 1992)("Even if plaintiff had filed a charge with the EEOC, and received a right-to-sue letter, his complaint would still be frivolous because he has failed to allege that at least one other employee, not in a protected class, was treated more favorably than he."). Adusumilli also continued in her trend of blaming the judiciary for her problems: "Judges who dismissed my cases are very unfair and irrational and I still dream that these judges one fine morning will come the court and open my dismissed cases and grant me relief.... My complaints are

16

genuine and I am very honest and sincere employee and there is no need for this court to control my behavior because I am right." (Pl. Response to Def. Mot. for Sanctions at PP. 2-3).

Adusumilli has refused to heed the warnings of the courts in the Northern District and the Seventh Circuit and is yet unrestrained from filing baseless lawsuits just because she is discharged from a place of employment. In light of this court's finding that the present action was entirely frivolous and unreasonable, and its specific warning to Adusumilli that it would entertain a motion for sanctions if this suit turned out to be baseless, the court will award Hospice's attorneys a reasonable fees and costs in accordance with Fed.R.Civ.P. 54(d)(1) and 42 U.S.C. § 2000e-5(k).

## CONCLUSION

For the reasons stated above, Hospice's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of the defendant. Hospice's motion for sanctions is granted. Hospice is given until January 7, 2004 to submit a bill of costs and declaration of fees containing the information required by L.R. 54.3(d)(1)-(3), although it is excused from any effort to negotiate the matter of fees with Adusumilli.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Date: December 8, 2004